# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STILWELL VALUE PARTNERS I, L.P.,<br>        Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION<br>NO. 06-4432 |
| PRUDENTIAL MUTUAL HOLDING CO.,<br>        Defendant. | : <br> : <br> : <br> : | |

## Memorandum

YOHN, J.                                                                                                      May ____, 2008

Presently before the court is a motion for reconsideration of this court's order denying the summary judgment motion of plaintiff Stilwell Value Partners I, L.P. ("Stilwell"), *see Stilwell Value Partners I, L.P. v. Prudential Mut. Holding Co.*, No. 06-4432, 2008 WL 1900945 (E.D. Pa. Apr. 23, 2008). Defendant Prudential Mutual Holding Company ("MHC") opposes the motion. Stilwell asks this court to grant its motion for reconsideration and to enter summary judgment in its favor. For the following reasons, Stilwell's motion for reconsideration has been denied.

**I.      Legal Standard**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration is proper where the moving party demonstrates one of three grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct

a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration "may not be used 'as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'" *Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 560 (3d Cir. 2002) (quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990)); *see also Rock v. Voshell*, 2005 WL 3557841, at *1 (E.D. Pa. Dec. 29, 2005) ("Mere dissatisfaction with the Court's ruling is not the basis for such a reconsideration, nor can such a motion be used as a means to put forth additional arguments which could have been made but which the party neglected to make.").

**II.     Discussion**

Stilwell argues pursuant to the third ground for reconsideration that this court's summary judgment opinion contains clear errors of fact and law. The parties' summary judgment motions dealt with two questions: (1) whether MHC violated its fiduciary duties owed to the minority shareholders of Prudential Bancorp, Inc. ("Prudential") by postponing a shareholder vote on the adoption of stock plans that would benefit Prudential's officers, directors, and employees (the "stock plans"); and (2) whether MHC will violate its fiduciary duties owed to the Prudential minority shareholders by casting its majority vote in favor of adoption of the stock plans.[1]

As to the first issue, the court granted MHC's motion and denied Stilwell's motion. Stilwell now makes three arguments for reconsideration of that question. First, Stilwell asserts

---

[1] For the purposes of this memorandum, the court will assume a familiarity with the facts underlying this case. *See Stilwell*, 2008 WL 1900945, at *1-6 (setting out the factual background).

that the court misidentified Joseph Corrato, the Executive Vice President and Chief Financial Officer of MHC, Prudential, and Prudential Savings Bank ("the Bank"), as a director. Second, Stilwell argues that the court incorrectly focused on April 19, 2006, the date the Prudential directors voted to postpone the shareholder vote on the stock plans, instead of focusing on June 2005, the period during which Stilwell alleges MHC decided to postpone the vote. Third, Stilwell argues that the court too narrowly defined how Pennsylvania corporations may act and failed to recognize that MHC can be bound by the unilateral acts of its President and Chief Executive Officer, Thomas Vento.

As to the second summary judgment issue, the court denied both MHC's and Stilwell's motions. Stilwell now makes two arguments for reconsideration of that question.[2] First, Stilwell argues that the court adopted a standard as to the fiduciary duties owed by a majority shareholder to minority shareholders that is contrary to controlling precedent in *Ferber v. Am. Lamp Corp.*, 469 A.2d 1046, 1050 (Pa. 1983). Second, Stilwell asserts that MHC failed to meet its burden of proof to survive Stilwell's motion for summary judgment because it offered no evidence of the fundamental fairness of the stock plans.

    A.    **The Court's Factual Error in Misidentifying Corrato as a Director Is Not a Significant Error and Is Irrelevant to the Issue**

The court mistakenly identified Corrato as a director. Reconsideration is not required, however, because the error is insignificant to the court's conclusions. Had the court correctly

---

[2] In its brief in opposition to Stilwell's motion for reconsideration, MHC asks this court to enter summary judgment in its favor on the question whether MHC will violate its fiduciary duties owed to the Prudential minority shareholders by casting its majority vote in favor of adoption of the stock plans. MHC has not filed a motion; therefore, the court will not address this request.

identified Corrato as Executive Vice President and Chief Financial Officer of MHC, Prudential, and the Bank, it would still be true that "[n]ot all the directors took th[e] view" that "they perceived no distinction between acting for one corporation and acting for another." *Stilwell*, 2008 WL 1900945, at *10. The quoted deposition testimony of directors Vento and Francis Mulcahy supports this conclusion. *Id.* Moreover, the misidentification of title does not affect the substance of Corrato's testimony. The fact that Corrato is not a director had no effect on the court's conclusion that Prudential's directors voted to postpone the vote on the stock plans during a Prudential board meeting. *See id.* ("Whether some of the directors saw no difference between acting for Prudential and acting for MHC is irrelevant in this case, however, when the only defendant remaining is MHC, the corporate entity, and the record reflects that the relevant votes were on behalf of Prudential.") Therefore, this factual error had no effect on the court's decision, and reconsideration is not necessary.

    **B.**  **Reconsideration of the Court's Decision Regarding MHC's Involvement in the Decision to Postpone the Shareholder Vote on the Stock Plans Is Denied**

    In determining that there is no evidence that MHC participated in the decision to postpone the vote on the stock plans, the court focused on corporate action taken by the corporations' boards of directors (and on not the acts of individual officers of the corporations). It thus centered its analysis on the vote of the Prudential directors at the Prudential board meeting on April 19, 2006, which fixed the date of the vote. The court did not, however, ignore Stilwell's argument that the decision to postpone the vote was made in June 2005. The court concluded that "the fact that the individual directors may have agreed to postpone the shareholder vote on the stock plans prior to the April 19, 2006 meeting of the boards of Prudential and the Bank does

not establish that the corporate act postponing the meeting was an act of MHC." *Id.*[3]

Even if the court erred in failing to focus sufficiently on the earlier date and in taking a too-narrow view of corporate action, reconsideration is not appropriate. Using June 2005 as the operative date and taking a broader view of how MHC may take corporate acts does not change the court's decision granting MHC's motion for summary judgment on this issue.

In support of his motion for reconsideration, Stilwell highlights the deposition testimony of Vento, the President and Chief Executive Officer of MHC, Prudential, and the Bank, regarding decisions made in June 2005. Focusing on these statements, it is still the case that no reasonable factfinder could find that MHC, as a corporation, took any action in June 2005 affecting the timing of the vote on the stock plans. Vento testified:

> A. Well, [Stilwell] announced that he wanted to get on the board and that, you know, failure to do that he could—he felt he could control the votes of the plans and he made us aware of that, and that's what that's referring to.
> Q. Okay. So why didn't you schedule a vote?
> . . . .
> A. It's my understanding that we couldn't—that that's when I was made aware that the MHC vote would not, would not be counted.
> . . . .
> Q. Okay. So why didn't you follow—well, why didn't you put the plans up for a vote in the second six months from the IPO?
> A. Because we knew they would be voted down.
> Q. Okay. And was that something you didn't want to happen?
> A. Yes.
> Q. Why?
> A. Well, first of all, we wanted to save money by not going through scheduling a meeting and then having it a fruitless meeting, and that's what would have happened.
> So we decided it was best to resolve the issue, and that's when we—if I'm not mistaken, that's when we got, we got the clarification from the FDIC on where they

---

[3] Although not raised by the parties, the Complaint does not appear to even make a claim against MHC for breach of a fiduciary duty by postponing the shareholder vote on the stock plans, whether that decision was made in June 2005 or April 2006. (*See* Compl. ¶¶ 61-72.)

>stood on the plans, and then we just sat there back and waited.
>   Q. Were you—and when did you decide that you would sit back and wait?
>   A. When we were told that we couldn't vote—we couldn't count the Mutual Holding Company vote in the first 12 months.

(Vento Dep. 167:12-170:7.) Nowhere in this testimony is evidence that Vento was acting on behalf of MHC (or the MHC board rather than the Prudential board) or that he caused MHC to delay the vote. Indeed, since a vote on the stock plans had originally been discussed by the Prudential board,[4] and the Prudential board had to schedule the vote, it is clear that Vento was speaking in his capacity as a Prudential director.[5] The allegation of factual error regarding the period on which the court should have focused is incorrect, and to the extent it has any basis, it is not a ground for reconsideration.

Stilwell's argument that the court erred by failing to acknowledge that Vento had the unilateral power to bind MHC in his capacity as President and CEO of MHC is also not a ground

---

[4] In an interrogatory, Stilwell asked MHC to "[i]dentify all plans that are currently in place or under consideration, that once were in place, or were considered in the past, for submitting the Stock Benefit Plans to a vote of [Prudential] shareholders." (Pl.'s Mem. Supp. Mot. Summ. J. Ex. I, at 8.) MHC objected on the ground that "MHC, as the majority shareholder, has no role in 'submitting the Stock Benefit Plans to a vote of the [Prudential] shareholders,'" and MHC responded that, "[f]ollowing the conversion, members of the [*Prudential*] board had limited discussions regarding the possibility of scheduling the shareholder vote between six and twelve months after the conversion." (*Id.* (emphasis added); *see also* Vento Dep. 160:10-163:2 (discussing the interrogatory response).)

[5] Although not argued by the parties, it is unclear to the court how MHC, even if Vento were in fact acting as its Chief Executive Officer at this point, could require Prudential's board to postpone the vote. He could have caused MHC to use its majority-shareholder status to require Prudential to schedule a shareholder meeting to consider postponing the vote, but that is not Stilwell's claim.

for reconsideration. This argument is based on evidence—notably MHC's bylaws[6]—that could have been, but was not, raised previously as evidence in support of Stilwell's motion or in response to MHC's motion for summary judgment. Stilwell does not suggest that the MHC bylaws were not available to it at the time the court granted summary judgment. Thus, the court need not consider the bylaws. See *Bailey v. United Airlines*, 279 F.3d 194, 201 (3d Cir. 2002) ("A district court may properly refuse to consider evidence presented in a motion for reconsideration when the evidence was available prior to summary judgment.").

Even taking into consideration MHC's bylaws, the result remains the same. Paragraph 3.4 of the bylaws provides:

> The Chief Executive Officer shall have general executive powers and shall have and may exercise any and all other powers and duties pertaining by law, regulations or practice to the office of the Chief Executive Officer, or imposed by these Bylaws.

---

[6] Stilwell also points to 15 Pa. Cons. Stat. § 1732(b) which provides:

Unless otherwise provided in the bylaws, all officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to the bylaws or, in the absence of controlling provisions in the bylaws, as may be determined by or pursuant to resolutions or orders of the board of directors.

Because the bylaws were not in the summary judgment record (nor was any relevant resolution or order of MHC's board of directors), the mere existence of this statutory provision is immaterial.

The court notes, however, that, in the abstract, the court's word choice with respect to how a corporation may act was too narrow. It is obviously true that a corporation may act other than through its board of directors. However, the context of the discussion at that point was action by a board of directors. More precisely, the sentence should have read, "As noted above, a board of a corporation acts only at a meeting of the directors." Regardless, as explained repeatedly here, there is no evidence in the record that MHC took any action with respect to the timing of the vote on the stock plans or that any officer or agent took an action on behalf of MHC (and which may be regarded as an act of MHC) with respect to the timing of the vote on the stock plans.

> The President shall have general executive powers and shall have and may exercise any and all other powers and duties pertaining by law, regulations or practice to the office of President, or imposed by these Bylaws. One individual may hold the position of Chief Executive Officer, President and Chairman of the Board.

(Pl.'s Mot. for Recons., Ex. A., at 3.) Stilwell asserts that this provision, together with 15 Pa. Cons. Stat. § 1732(b), means that "MHC is responsible for the acts of its CEO and President, Thomas Vento." (Mot. 5.) As noted above, there is no evidence that Vento in June 2005 (or at any other time) took action *as an officer or agent of MHC* with regard to postponing the vote on the stock plans.

Finally, Stilwell asserts that "MHC is responsible [for the postponement of the shareholder vote on the stock plans] for an additional reason which the [c]ourt did not address in its decision." (Pl.'s Mot. 5.) Namely, Stilwell asserts that "regardless of whether MHC can be said to have acted before then, it indisputedly will act when it votes," and "[a]t that point, it will have knowingly reaped the benefit of the misconduct that made the vote possible." (*Id.* at 5.) The court has now twice addressed the argument—first in its summary judgment memorandum and, again, here—and found that there is no evidence in the record of "misconduct" by MHC with respect to the timing of the vote. There is no evidence in the record that MHC caused the vote to be postponed, either through an act by the MHC board or through an act by an officer or agent of MHC. Stilwell's final argument on this issue is thus unavailing.

In sum, reconsideration is not merited by any factual or legal error the court may have made in resolving the first summary judgment issue. Even using June 2005 as the operative date, and taking into account Stilwell's interpretation of MHC's bylaws that MHC's President and Chief Executive Office may unilaterally bind MHC, it remains the case that there is no evidence

8

that MHC took action affecting the postponement of the vote on the stock plans.[7]

### C. Reconsideration of the Court's Decision Regarding MHC's Anticipated Vote to Approve the Stock Plans Is Denied

The court set out relevant Pennsylvania law, quoting from the explanation of that law contained in the court's previous opinion disposing of MHC's motion to dismiss. That statement of the law includes prominently the rule from *Ferber*[8] that majority shareholders may act in their own best interest only when the action is also in the best interest of all shareholders *and* the corporation. *Stilwell*, 2008 WL 1900945, at *7. Stilwell argues that the court erred by focusing on the prong of the *Ferber* test involving the best interest of the corporation and by not focusing on the prong involving the best interest of the minority shareholders. Although in portions of its memorandum the court focused on the best-interest-of-the-corporation prong of the *Ferber* test, reconsideration is unnecessary because the court clearly considered both prongs.

The *Ferber* rule is a conjunctive test; therefore, the court's statement that "in upholding its fiduciary duties a majority shareholder of a corporation may act in its own best interest only when its best interest is also the best interest of the corporation," *id.* at *13, is correct. Additionally, in resolving the summary judgment motions, the court did not "eliminate[] the distinct duty [of a majority shareholder] to act 'in the best interest of all shareholders,'" (*see* Pl.'s Mot. 7). Instead, the court discussed the best interest of the corporation, including in that

---

[7] The court is also still unclear as to the significance to plaintiff of the postponement of the vote. Had the stock plans been submitted to the shareholders of Prudential during the first year and rejected, Prudential could still have resubmitted the stock plans to the shareholders in the second or a later year.

[8] The Pennsylvania Supreme Court set out the basic test for a majority shareholder's breach of its "quasi-fiduciary" duty to minority shareholders in *Ferber*, 469 A.2d at 1050.

9

analysis an analysis of the best interest of the minority shareholders.[9] The court concluded that it "cannot on the basis of the record before [it] determine whether MHC's anticipated vote to approve the stock plans would be in the best interest of Prudential and its stakeholders." *Stilwell*, 2008 WL 1900945, at *14. "Stakeholders" obviously includes both the minority and majority shareholders. That the court examined the two interests together, instead of seriatim, is insufficient grounds for reconsideration. Indeed, examining the two interests seriatim, relying on the same evidence, leads to the same result, meaning that reconsideration is not merited.

Assuming that the two interests must be examined seriatim, the court would reach the same conclusion because neither party has shown that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. With respect to the best-interest-of-the-corporation prong, the court held that it must examine the effect of the vote on "the interests of the minority shareholders, 'employees, suppliers, customers and creditors' of Prudential, and 'communities in which offices or other establishments' of Prudential are located," as well as "the goals of the mutual holding company structure." *Id.* Because the parties had not addressed the effect of the proposed stock plans on any of the constituencies other than to a limited extent, the court concluded that it could not resolve the issue on summary judgment. *Id.*

With respect to the best-interest-of-the-minority-shareholders prong, the court addressed

---

[9] *Stilwell*, 2008 WL 1900945, at *14 ("The best-interest-of-the-corporation analysis is broader, to take into account . . . the interests of the minority shareholders, 'employees, suppliers, customers and creditors' of Prudential, and 'communities in which offices or other establishments' of Prudential are located."). This section of the memorandum reviewed the provisions of Pennsylvania's "constituency statute." Whether that statute is applicable to the facts of this case as an elucidation of the *Ferber* best-interest-of-the-corporation prong is a matter that can be reargued at trial.

Stilwell's arguments: that MHC's vote to approve the stock plans would be unfair because there is no evidence that the directors considered using a committee of disinterested persons to represent the interests of the minority shareholders when designing the plans and their administration, because there was no discussion by the directors as to whether the plans would satisfy the business purposes of attracting and retaining talented employees, because implementation of the plans would dilute the value of the minority shareholders' stock, and because MHC's participation in the vote will allegedly violate a condition imposed by the Pennsylvania Department of Banking. *Id.* at *14-16. The court concluded that it could not resolve factual disputes related to these issues on summary judgment. *Id.*

Furthermore, although it is true that MHC argued that the substance of the plans is irrelevant to resolution of the summary judgment motions, the record contained sufficient evidence to deny Stilwell's motion for summary judgment. *See id.* at 15 (pointing out evidence relating to the business purposes of the plans and the effect of the plans on share value).

In sum, the court addressed each prong of the *Ferber* test, the parties' evidence, and the parties' arguments presented in their summary judgment motions, and found neither party entitled to summary judgment on the question whether MHC will breach its fiduciary duties owed to the Prudential minority shareholders by casting its majority vote in favor of adoption of the stock plans. Addressing the two prongs of the *Ferber* test seriatim, the court would reach the same conclusion. Thus, reconsideration of this issue is denied.

                                                             s/ William H. Yohn Jr.
                                                             William H. Yohn Jr., Judge